IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 16, 2006 Session

# STATE OF TENNESSEE, ex rel. PEGGY HAYES v. LUTHER CARTER

**A Direct Appeal from the Juvenile Court for Gibson County**
**No. 7601      The Honorable Robert Newell, Judge**

_____

**No. W2005-02136-COA-R3-JV - Filed July 6, 2006**

_____

This is a Title IV child support case involving the validity of an Order modifying retroactive child support. Following the entry of an agreed order establishing paternity, Father/Appellee entered into an agreed order setting retroactive child support from the time of the child's birth. Some five years after entering into this agreed order, Father/Appellee petitioned the court to modify the retroactive support order. The trial court granted Father/Appellee's motion. The State of Tennessee ex rel. Peggy Hayes appeals. We vacate the order of the trial court modifying retroactive child support.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Vacated**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter; Warren Jasper, Assistant Attorney General, for Appellant, State of Tennessee, ex rel. Peggy Hayes

Sam J Watridge of Humboldt, Tennessee for Appellee, Luther Carter

## OPINION

On October 10, 2002, the State of Tennessee, ex rel Peggy Hayes ("State, or "Appellant") filed a "Petition to Establish Paternity and Set Support" against Luther Carter ("Father," or "Appellee"). Attached as "Exhibit A" to the Petition was a paternity test establishing Mr. Carter as the biological father of Cardarius D. Hayes, who was born on September 11, 1997. The Petition stated that Ms. Hayes was receiving Title IV-D services because she participated in a State sponsored public assistance program. On October 10, 2002, an "Agreed Parentage Order" was entered, in which Mr. Carter was adjudicated to be the father of the child, and was ordered, *inter alia*, to pay $525.00 per month in child support beginning on October 4, 2002. A hearing to set retroactive child support was set for January 14, 2003. On January 28, 2003, an "Agreed Order Setting Retroactive

Support" was entered. This Order indicates that Mr. Carter "chose to proceed without counsel," and establishes retroactive child support, for the period September 12, 1997 to October 4, 2002, at $24,459.79. Mr. Carter was ordered to pay the arrears at a rate of $86.67 per month in increments of $20.00 per week. On February 12, 2003, an "Administrative Order for Modification of Current Support" was entered by the Title IV-D Administrator adjusting Mr. Carter's child support to $49.39 per week based on a monthly gross income of $1,191.67.

On June 7, 2005, Mr. Carter filed a "Motion to Modify Final Orders." In his Motion, Mr. Carter allegeds that Ms. Hayes was providing neither a stable environment nor proper care and influence for the child. Mr. Carter requests that he be designated as primary residential parent. Following a hearing, the trial court entered an Order on June 14, 2005. The Order reads, in pertinent part, as follows:

> The Court found that the child has been improperly supervised by the Mother; that she has not had a stable home as she has moved several times in the last three years and that the Mother is not the best parent with whom the child should reside.
>
> It further appeared to the Court that the child's report cards have continuously listed the Father as Dallas Price and that a fraud had been practiced on the Court in establishing retroactive child support.

The Court granted Mr. Carter temporary custody of the child, suspended his child support obligation, and ordered Mr. Carter's attorney to meet with the Maximus attorney to "review the order of retroactive support and determine if it is to be modified...."

On June 22, 2005, Mr. Carter filed a "Motion to Adjust Arrearage," in which he alleged that "he had no idea that he was the Father of the child and was in fact mislead by the Mother as to the identity of the Father." The State filed an "Answer and Motion to Adjust Arrearage" on July 5, 2005. In its counter-petition, the State averred that both the "Agreed Parentage Order" and "Agreed Order Setting Retroactive Support" were final orders that had not been appealed by Mr. Carter. A hearing on the "Motion to Adjust Arrearage" was held on June 14, 2005 and August 16, 2005. In its Order of August 24, 2005, the trial court found, in relevant part, as follows:

> The Court in a prior order had entered a "consent order" which established an arrearage of child support in the amount of Twenty-four thousand four hundred fifty-nine dollars and seventy-nine cents ($24,459.79). There was no evidentiary hearing held by the Court. A consent order had been entered by representatives of Maximus which had been signed by the parties.

The Court found that Father had signed the order because he was told he had no other choice and was not advised of his right to an evidentiary hearing or to counsel.

The Court further found that the Mother had mislead the Father concerning the identity of the Father and had listed Dallas Price as the Father of the child until June 14, 2005.

The Court further found that the prior decision had been reached in error, partly because of the Mother's misrepresentation and fraud upon the Court.

The Court found that equitable relief should be rendered and reduced the arrearage from Twenty-four thousand four hundred fifty-nine dollars and seventy-nine cents ($24,459.79) to Eight thousand four hundred eighty dollars and fifty cents ($8,480.50) which reflects child support arrearage for 70 weeks which accumulated from June 2001 to October 14, 2004. Prior arrearage was determined from September 12, 1997 to October 14, 2002. The date of parentage testing was August 19, 2002.

It is therefore, ORDERED, ADJUDGED AND DECREED:

1. That prior orders establishing an arrearage of Twenty-four thousand four hundred fifty-nine dollars and seventy-nine cents ($24,459.79) are rescinded. Retroactive support is Eight thousand four hundred eighty dollars and fifty cents ($8,480.50) which the Father shall pay at the rate of Fifty dollars ($50.00) per week until paid.

The State appeals and raises one issue for review as stated in its brief:

Whether the trial court unlawfully set aside a valid retroactive child support order.

It is well settled in Tennessee that biological parents must, as a general matter, support their children until they reach the age of majority. *See* T.C.A. § 34-1- 102(a), (b) (2001); *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn.1987). Their support obligations are joint and several, and the extent of their obligations depends on their ability to provide support. When necessary, the courts may apportion the responsibility for support between the parents according to their respective abilities to provide support. *See State ex rel. Grant v.. Prograis*, 979 S.W.2d 594, 601 (Tenn.Ct.App.1997); *Gotwald v. Gotwald*, 768 S.W.2d 689, 698 (Tenn. Ct. App.1988). The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married. When paternity of a child born out of wedlock

is established, the trial court is required to address not only the child's need for future support, but also the father's obligation to pay past support. T.C.A. § 36-2-311; *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). In *State ex rel. Coleman v. Clay*, 805 S.W.2d 752 (Tenn. 1991), our Supreme Court specifically held that "...the father of a child born out of wedlock is statutorily liable for support *from and after the child's birth*." *Id.* at 755 (emphasis added). "Thus, the obligation to support a child exists from the child's birth, and upon entry of an order establishing paternity, the father is liable for support back to that date." *State ex rel. Clark v. Wilson*, No. M2001-01626-COA-R3-CV, 2001 WL 31863296 (Tenn. Ct. App. Dec. 23, 2002) (citing *Coleman*, 805 S.W.2d at 754-55).

In the instant case, Mr. Carter entered into an "Agreed Order Setting Retroactive Support," in which he agreed to pay retroactive child support in the amount of $24,459.79. This amount represents support from the child's birth until the entry of the "Agreed Parentage Order" establishing Mr. Carter's paternity and setting prospective support for the child. The results of the paternity test (which were attached to the "Agreed Parentage Order") are dated August 29, 2002. Consequently, it is clear that, at the time he entered into the "Agreed Order Setting Retroactive Support," on or about January 28, 2003, Mr. Carter knew that he was the child's biological father. This same Order also indicates that Mr. Carter chose to proceed without counsel.

According to the Order of August 24, 2005, the trial court based its decision to "rescind" the "Agreed Order Setting Retroactive Support" upon a finding that: (1) [Mr. Carter] "signed the order because he was told he had no other choice and was not advised of his right to an evidentiary hearing or to counsel;" (2) [Ms. Hayes] had mislead [Mr. Carter] concerning the identity of the father and had listed Dallas Price as the father of the child until June 14, 2005;" and (3) the prior decision [i.e. the "Agreed Order Setting Retroactive Support"] had been reached in error, partly because of [Ms. Hayes'] misrepresentation and fraud upon the Court." Having reviewed the record, we conclude that none of these grounds for relief are supported by the record. First, it is well settled that there is no absolute right to counsel in a civil trial. *See Rockwell v. Arthur*, 673 S.W.2d 512, 515 (Tenn. Ct. App. 1983) (citing *Barish v. Metropolitan Government, Etc*., 627 S.W.2d 953 (Tenn. Ct. App.1981)). There is also no indication in this record that Mr. Carter was denied any opportunity to present evidence to the court, nor is there any evidence to suggest that his consent to pay retroactive child support was the product of duress or mis-information. Concerning any fraud or mistake perpetrated upon Mr. Carter, or the trial court, due to Ms. Hayes' holding Dallas Price out as the father of this child, we likewise find those grounds for relief untenable. As discussed above, the paternity test results of August 29, 2002 clearly indicate that Mr. Carter knew he was the child's father nearly five months before he entered into the "Agreed Order Setting Retroactive Support," and nearly five years before he filed to modify that order. Any representations Ms. Hayes made, therefore, are irrelevant in light of the paternity test, in light of the agreed order thereon, and in light of a parent's obligation to support his or her child from the child's birth, *see supra*.

Moreover, T.C.A. § 36-5-101 (f)(1)(2005) provides in pertinent part, as follows:

-4-

Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

This provision was added by amendment in 1987 and then codified as T.C.A. § 36-5-101 (Supp. 1989). In *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991), our Supreme Court considered the issue of retroactive modification of child support orders. In light of the then T.C.A. § 36-5-101 (a)(5), the Court said:

The 1987 amendment specifically bars retroactive modification and puts the burden on the obligor to come into court and seek any current or prospective relief to which he may be entitled, by means of a formal court order. To permit the interposition of traditional equitable defenses to the enforcement of child support orders would obviously defeat the very purpose of the amendment, by creating a situation where exceptions could easily swallow up the rule.

*Id.* at 607. The Supreme Court's reasoning in *Rutletdge* applies equally to the issue presented by the instant case.

For the foregoing reasons, we vacate the trial court's Order of August 24, 2005 to the extent that it modifies Mr. Carter's retroactive child support obligation. Retroactive child support shall be paid in accordance with the "Agreed Order Setting Retroactive Support" of January 28, 2003. Costs of this appeal are assessed against the Appellee, Luther Carter.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.